Fran Carpini, Asst. U.S. Atty., Ft. Myers, FL, Thomas P. Ott, Sp. Atty., Tax Div., U.S. Dept. of Justice, Washington, DC, for U.S.

Fred Bennett, Dallas, TX, for defendant Raymond David Young.

**UNITED STATES of America,**

v.

**Raymond David YOUNG, Thomas Paul Roettele, Mohamed Ahmed, Defendants.**

**No. 92–83–CR–FTM–21–D.**

United States District Court, M.D. Florida.

Feb. 27, 1993.

Karen Larson, Marco Island, FL, for defendants Raymond David Young and Thomas Paul Roettele.

Ronald J. Waska, Houston, TX, for defendant Thomas Paul Roettele.

Richard B. Kuniansky, Law Office of Thano Dameris, Houston, TX, Howard Freidin, Fort Myers, FL, for defendant Mohamed T. Ahmed.

### ORDER

GAGLIARDI, Senior District Judge.

The Defendants, Raymond David Young, Thomas Paul Roettele and Mohamed Ahmed, have moved the Court to suppress statements of Defendant Young, recordings of conversations with Defendant Young and records and other items obtained as a result of a review of Young's company Dry Tortugas Marina, Inc. done by I.R.S. Revenue Agent Robert Sutherland. The Defendants claim that the evidence should be suppressed because the review was part of a criminal investigation of which Young was not apprised when his consent to the review was obtained and that, therefore, his consent was ineffective.

Neither Defendant Roettele nor Ahmed has standing to object to the use of this evidence. For the purpose of this order, it will be assumed that Defendant Young does have standing as to all of the evidence sought to be suppressed.

At a hearing on the issue, the evidence suggested that agent Ruka of the I.R.S. Criminal Investigation Division was gathering information on Defendant Young at the time of Agent Sutherland's review, but that Sutherland's review was routine and not a part of the criminal division's efforts. Ruka testified that he was attempting to determine the normal course of the fuel sales business. He was referred to Sutherland by another revenue agent because such businesses are within the expertise of. the excise group of which Sutherland was a member.

On April 12, 1991 Ruka contacted Sutherland who described the nature of the business and explained the use of 637 certificates.[1] Ruka inquired about whether Young's company Dry Tortugas Marina (DTM) had a 637 certificate. Both he and Sutherland testified that this was public information. Ruka also asked if Sutherland was familiar with Young.

Sutherland researched whether DTM had a 637 certificate and telephoned Ruka on April 29, 1991. He indicated to Ruka that DTM did have a 637 certificate. He also indicated that it was due to be reviewed. Sutherland told Ruka that their normal procedure, once a 637 was granted, was to do a follow-up review six months after the 637 application was initially reviewed and then perform regular reviews every two years. He indicated that DTM was due for their first two-year review and that a six-month review had not been performed.

Agent Sutherland testified that when he learned that a six-month review had not been performed, he called Rick Weppler, the revenue agent who had done the initial application review. Weppler told him that at the time of the application review, DTM had yet to start up its business. This, Sutherland testified, caused him great concern in light of the fact that a six-month review had not been performed. He testified that it had been his experience that 637 certificates were not readily approved for businesses that were not already operating. He therefore felt that it was imperative that DTM be reviewed

since two years had passed without confirmation that they were in operation.

Agent Sutherland was candid about the fact that he was aware that Young was being targeted by Ruka for investigation at the time that he decided to review DTM's 637 certificate. He was also aware of other allegations of criminal activity on Young's part from other sources. He had come to possess this information through his involvement in other criminal investigations as a member of various task forces wherein he lent his special expertise.

Agent Sutherland testified, however, that his decision to audit DTM was based solely on his review of their file and the standard criteria upon which such decisions were normally made. He maintained that the only part that Agent Ruka played in his decision was bringing DTM to his attention. He indicated that the issue of a two year review for DTM's 637 certificate would have arisen shortly regardless of Agent Ruka's contact.

After deciding to review DTM, Agent Sutherland contacted Defendant Young, identified himself, told him that DTM was due for a routine review of its 637 certificate and faxed him a list of documentation that would be required. On April 30, 1991 Sutherland went to the office of DTM. He introduced himself and spent most of the day with Young in performing the review. Sutherland testified that the procedure which he followed, and the documentation that he requested of Young, were standard. He testified that he used pro forma interview questionnaires and document requests as part of the review.

Sutherland testified that when he arrived, Young did not inquire as to the nature of the review. Young's wife testified, however, that Young did inquire at that time whether it was a criminal matter. She stated that Sutherland replied that it was not. Whether Young did or did not inquire is not relevant under these circumstances, however, since the response Young's wife claims to have received would not have been misleading under the circumstances.

---

1. A 637 certificate allows for the excise tax free  transfer of fuel.

■ The Fourth Amendment requires only that Revenue Agents requesting consent to perform an audit[2] identify themselves and inform the taxpayer of the nature of their inquiry. *United States v. Wuagneux*, 683 F.2d 1343 (11th Cir.1982), *cert. den.*, 464 U.S. 814, 104 S.Ct. 69, 78 L.Ed.2d 83. There is no need to explicitly advise a taxpayer that information uncovered in the audit could lead to criminal proceedings. *Id.*

■ The Defendants have not shown that Young was misled by Sutherland. At most what Agent Sutherland did was failing to inform Young of his knowledge that Young was being considered as a target for investigation. Agent Sutherland no more had a duty to inform Young of his knowledge that Agent Ruka was considering opening an investigation of him than he did to apprise him of the other knowledge he was privy to through his position. *Id.*

"A party alleging ineffective consent on [the ground that it was induced by trickery] must show affirmative acts by the agent that materially misrepresent the nature of the inquiry." *Id.* at 1347. The Defendants have not done so. The weight of credible evidence was that Agent Sutherland made a decision to review DTM based on civil parameters strictly for civil purposes. He adequately informed Young of that purpose and received his consent on that basis to the review. Agent Ruka's role here was no different from that of any other coincidence that could have brought DTM to agent Sutherland's attention before it would have otherwise.[3]

Upon consideration of the evidence presented, it is the decision of the Court that the Defendants have not demonstrated, either factually or legally, that they are entitled to have the statements of Defendant Young and records and other items obtained as a result of the review done by I.R.S. Revenue Agent

Robert Sutherland suppressed. The motion is, therefore, denied.

So Ordered.

---

2. The procedure that Agent Sutherland was performing was not an "audit," but a "review." The evidence suggested that, if anything, a review is less intensive than an audit. Therefore, the standard for consent to an audit would encompass that for a review.

3. Agent Ruka testified, in fact, that it was his hope that Sutherland would not review DTM, in order to avoid even the appearance of the very issue raised by the Defendants in this motion. Sutherland confirmed that Ruka attempted to persuade him to defer the review, but that he insisted that it was necessary for civil purposes.